ILLINOIS CENT. R. CO. *v.* PEEL.

[70 South. 887.]

1. DEPOSITIONS. *Admissibility. Carriers. Carriage of live stock. Evidence.*

Depositions taken without any notice whatever having been given to the defendant or its attorneys should not have been received in evidence.

2. CARRIERS. *Carriage of live stock. Evidence.*

Proof that cattle were shipped in good condition when they started and that on arrival at destination one was found dead and another so badly injured that it died shortly afterwards will not alone establish negligence on the part of the carrier.

APPEAL from the circuit court of Copiah county.

HON. J. B. HOLDEN, Judge.

Suit by L. G. Peel against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

The rule of liability announced by this count is set forth in the leading case, of *L. N. O. & T. Ry. Co.* v. *Bigger,* 66 Miss. 319. That was a case in which B. F. Bigger shipped from Memphis, Tennessee, over appellant's railroad, a lot of mules to be delivered at Greenville, Mississippi, and the suit was brought by him to recover damages for injury to one of the mules by having its hoof torn off by reason of which it was rendered valueless. The proof showed that the mules were loaded in two ordinary stock cars at Memphis; the cars were shown to be in good condition and were such as are in common used by railroads for transportation of live stock. There was no positive or direct evidence of any negligence on the part of the defendant company of any of the cattle or that the cattle were delayed in shipment, or any omission of duty in reference to the stock. The plaintiff however, testified that the mules were all sound when they were loaded on the cars at Memphis; that they were loaded at eight o'clock at night; that while the train containing the cars was being switched, it was run into by a switch engine and considerably delayed and that there was some jarring of the train during the switching. The agent of the plaintiff, who received the mules at Greenville, testified that he noticed at the time they were loaded, that one of the mules was lame and that soon afterward it was discovered that one of them had its hoof torn off.

Chief Justice Arnold delivered the opinion of the court, and in the course thereof, used the following language:

"It is not shown how the hoof of the mule was torn off or whether it was done on the train or after it left the train, but it does appear that the car in which the mule was carried was suitable, the track was in good condition; that the equipment and appliances on the train were adequate; there was no culpable delay in transit and there was no fault, negligence or want of care in any respect, on the part of the carrier or its employees, in handling the stock or in the running or management of the train.

Under these circumstances, the carrier is not liable for the injury of the mule, which may have been self inflicted, or caused by the other mules in the car, if indeed the injury occurred on the train.'' He further states the rule of law to be as follows:

''Animals, when being transported in a manner contrary to their habits and instincts, may injure or destroy themselves or each other, notwithstanding every reasonable precaution which may be used to prevent it. For such occurrences, the carrier is not answerable. He is relieved from the responsibilities or casualties of this description, if he shows that he has provided suitable means for transportation, and exercised that degree of care which the nature of the property requires.''

''In case the mules are injured while being carried by the railroad company, a recovery therefore cannot be had, if it appear that the train met with no accident, was properly handled, and the car was suitably and properly equipped, then the peremptory instruction for the carrier should be given, even though the witnesses testified to opinions that the animals were so crowded in the car that they could not have injured themselves.

And further in the body of the opinion, Chief Justice Wood says as follows: ''As to one of the mules for which recovery was had, there is utter absence of any evidence that it received any injury on the train while being transported from St. Louis to Lexington. . . . But if it be conceded that the evidence warranted the jury in finding that this mule was injured on the train as was the case with the other mule which was sorely disabled when taken from the car, still on all the evidence in the case the railroad company was not liable. How the animals were hurt or by what means, nowhere appears.''

And again: ''But common observation and experience of mankind at all familiar with the capacity for gymnastics on the part of this hybrid, warn us not to place reliance on mere opinions of witnesses on this point. If they did not inflict the injuries on themselves, how

were they inflicted? Speculation however, is profitless, for if the railroad company exercised reasonable care in transporting the animals, no liability attached to it, and we have seen that this burden was conclusively borne by the railroad. The peremptory instruction asked by the appellant should have been given." We therefore submit that on the testimony in this case the plaintiff wholly failed to make out a case of liability against the defendant, and this being true, the peremptory instruction should have been given.

*McNeil & Loeb,* for appellee.

This is an appeal from a judgment assessing one hundred dollars damages for negligence in handling a shipment of stock from Hazelhurst, Mississippi, to St. Louis, Missouri.

The case originated in the court of A. W. Russell, Justice of the Peace, at Hazelhurst, and comes here from the circuit court of Copiah county. This judgment is predicated upon the testimony of plaintiff who showed that the stock were loaded at Hazelhurst in good condition, and the testimony, by deposition of one W. E. McKee, of St. Louis, who testified to the bad condition of the stock upon delivery to consignee; one steer was dead in the car on arrival and another died the following day from bruises.

No testimony was offered by the defendant.

The sole question presented by the record is: Should defendant's motion to suppress have been sustained?

POTTER, J., delivered the opinion of the court.

In the trial of this case in the circuit court, the deposition of a witness, W. E. McKee, was introduced and admitted as evidence over the objection of the defendant. The suit was for damages for the injury and death of two steers shipped over appellant's railroad, with other cattle, to St. Louis, Mo., and alleged to have been injured by

the carrier to such extent that they died from the injuries. The plaintiff did not attempt to prove by any other witness, execpt McKee, that the cattle were injured; therefore his testimony was not only material, but absolutely necessary to establish the plaintiff's case. It appears from the record that the above deposition was taken without any notice of any character ever having been given to the defendant or its attorneys. No opportunity to submit cross-interrogatories appears to have been given the defendant; in fact, in so far as the record shows, the deposition was entirely *ex parte*. It was error, therefore, to admit same over the objection of the defendant.

In addition to this, we think the testimony in this case is insufficient. The testimony shows that the cattle were shipped in first-class condition from Hazelhurst, and that on arrival in St. Louis one head was dead and another crippled, and died before it could be sold. There is no testimony to show that the dead steer died from injuries of any sort; nor is there any testimony of the extent of the injuries the crippled steer suffered, or the nature of same; nor did any witness testify that its injuries were such as would have likely produced death. This is the only testimony with reference to the injuries of the cattle in the case.

*Reversed and remanded.*